IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| M. DENISE TOLLIVER, | : |
|     Plaintiff, | : |
| v. | : Civ. No. 14-1021-LPS |
| TRINITY PARISH FOUNDATION, et al., | : |
|     Defendants. | : |

M. Denise Tolliver, Camden, Delaware, Pro Se Plaintiff.

Margaret M. DiBianca, Lauren Elizabet Moak Russell, and Scott A. Holt, Enquires, Young, Conaway, Stargatt & Taylor LLP, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

July 28, 2016
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Pending before the Court is a motion filed by Plaintiff M. Denise Tolliver ("Plaintiff") to disqualify Young, Conaway, Stargatt & Taylor LLP ("YCST") as counsel for Defendants. (D.I. 91) For the reasons that follow, the Court will deny the motion to disqualify.

## II. BACKGROUND

Plaintiff, who proceeds *pro se*, filed this action on August 8, 2014, alleging employment discrimination following her termination as executive director of Defendant Delaware Futures, Inc. (D.I. 1) Plaintiff also filed suit in State Court and, following removal of the State case, the Court consolidated the cases. (*See* D.I. 20) The second amended complaint, filed September 1, 2015, is the operative complaint. (D.I. 25) Named as defendants are Trinity Parish Foundation, Delaware Futures, Inc., Patricia Downing, and Maile Statuto. They are all represented by YCST.

Plaintiff was represented in an employment discrimination claim against Caesar Rodney School District ("Caesar Rodney") by Teresa A. Fariss Cheek ("Fariss"), a former partner at YCST. YCST's firm records indicate that an attorney-client relationship existed between Plaintiff and Fariss in relation to a charge of discrimination filed by Plaintiff against Ceasar Rodney on November 17, 1995. (*See* D.I. 93 at Ex. B) Fariss was retained by Plaintiff in March 1997, to follow up on the status of the charge that Plaintiff had filed and that remained pending before the U.S. Equal Employment Opportunity Commission ("EEOC"). (*See id.* at Ex. C) Fariss corresponded with the EEOC on Plaintiff's behalf on March 20, 1997 and October 19, 1998. (*See id.* at Exs. D, E) According to Defendants, YCST's records do not reflect any further communication between Fariss and the EEOC. (*See* D.I. 93 at 2)

1

Also according to Defendants, YCST's records do not indicate that a lawsuit was filed on behalf of Plaintiff, there was a settlement, or that any action was taken under seal. (*Id.* at 3) Fariss last communicated with Plaintiff by letter on June 2, 2000. (*See* D.I. 93 at Ex. F) The letter states that Fariss had not spoken to Plaintiff since 1998, had received no further communication from the EEOC, and asked Plaintiff how she would like to proceed. (*Id.*) Fariss left her position with YCST in December 2010 and, according to Defendants, YCST's files do not indicate there was any further communication between Plaintiff and Fariss following the June 2000 letter. (*See* D.I. 91, D.I. 93 at 3)

Plaintiff commenced an employment discrimination action in this Court against Red Clay Consolidated School District ("Red Clay") on November 21, 2002, Civ. No. 02-1648-GMS. In that case, YCST represented Red Clay, and Plaintiff was represented by counsel. (D.I. 93 at Ex. A at 11) Neither Plaintiff nor her counsel objected to YCST's representation of Red Clay or moved to disqualify YCST from its representation. *See* Civ. No. 02-1648-GMS Court Docket Entries. The case ultimately settled. (*See* D.I. 94 at P53)

After discovery commenced in the instant case, Plaintiff was deposed on May 26, 2016. She testified she had been a witness in employment discrimination litigation involving Ceasar Rodney. (D.I. 93 at Ex. A at 9) During the deposition Plaintiff did not disclose that she had filed a charge of discrimination or a lawsuit against Ceasar Rodney or that she had an attorney-client relationship with YCST or its attorneys. (*Id.* at Ex. A) Plaintiff was asked if she was a party to the litigation – *McDonald v. Caesar Rodney School District Matter* – and she replied, "No." (D.I. 93 at Ex. A at 9) When asked if she was deposed as a witness, she replied, "Yes." (*Id.*) When asked if she was represented by counsel in the *McDonald* litigation, Plaintiff replied, "No." (*Id.* at 58) She testified that Mr. McDonald was represented by Fariss in the *McDonald* matter. (*See id.* at 59) Plaintiff also

2

testified that she could not really recall her testimony as a witness for Mr. McDonald, stating: "[i]t's been a long, long, time ago." (*Id.* at 57) When asked if she was involved in any other lawsuits besides an automobile accident case filed in State court or the case that involved Red Clay, Plaintiff replied, "Not that I can recall." (*Id.* at 12)

On June 24, 2016, Plaintiff filed a reply brief in support of a motion for summary judgment and, therein, advised the Court of an undisclosed conflict of interest that was discovered at her deposition. (D.I. 87) On July 5, 2016, Plaintiff filed the pending motion to disqualify opposing counsel for conflict of interest. (D.I. 91)

### III.   LEGAL STANDARDS

The Court has the inherent authority to supervise the professional conduct of attorneys appearing before it, including the power to disqualify an attorney from a representation. *See United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Motions to disqualify are "generally disfavored" and, therefore, require the moving party to show clearly that "continued representation would be impermissible." *Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*, 491 F. Supp. 2d 510, 513 (D. Del. 2007) (internal quotation marks and citations omitted); *see also Conley v. Chaffinch*, 431 F. Supp. 2d 494, 496 (D. Del. 2006) (same). Because "[t]he maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so important," however, a court may disqualify an attorney "for failing to avoid even the appearance of impropriety." *Kabi Pharmacia AB v. Alcon Surgical, Inc.*, 803 F. Supp. 957, 960 (D. Del. 1992).

Attorney conduct is governed by the ethical standards of the court before which the attorney appears. *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984). The District of Delaware has adopted the Model Rules of Professional Conduct of the American Bar Association ("M.R.P.C."). *See* D. Del. LR 83.6(d). M.R.P.C. Rule 1.9(a) provides:

3

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Rule 1.9 exists for the purpose of preventing "even the potential that a former client's confidences and secrets may be used against him," to maintain "public confidence in the integrity of the bar," and to fulfill a client's rightful expectation of "the loyalty of his attorney in the matter for which he is retained." *Corn Derivatives*, 748 F.2d at 162.

To establish that a representation violates Rule 1.9, four elements must be shown: "(1) the lawyer must have had an attorney-client relationship with the former client; (2) the present client's matter must either be the same as the matter the lawyer worked on for the first client, or a 'substantially related' matter; (3) the interests of the second client must be materially adverse to the interests of the former client; and (4) the former client must not have consented to the representation after consultation." *Apeldyn Corp. v. Samsung Elecs. Co., Ltd.*, 660 F. Supp. 2d 557, 561 (D. Del. 2009).

To determine whether a current matter is "substantially related" to a matter involved in a former representation, and, thus, whether disqualification under Rule 1.9 is appropriate, the Court must answer the following three questions: "(1) What is the nature and scope of the prior representation at issue? (2) What is the nature of the present lawsuit against the former client? (3) In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation?" *Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 652 F. Supp. 1281, 1283 (D. Del. 1987) (internal quotation marks and citations omitted); *see also Talecris*, 491 F. Supp. 2d at 514. When attempting to determine whether a

"substantial relationship" exists, disqualification may be proper "when the similarity in the two representations is enough to raise a common-sense inference that what the lawyer learned from his former client will prove useful in his representation of another client whose interests are adverse to those of the former client." *Cardona v. General Motors Corp.*, 942 F. Supp. 968, 973 (D.N.J. 1996) (internal quotation marks and citations omitted).

To the extent that a motion to disqualify involves imputing an individual lawyer's representation to an entire firm, M.R.P.C. 1.10(b) is relevant. It provides that

> When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless: (1) the matter is the same or substantially related to that which the formerly associated lawyer represented the client; and (2) any lawyer remaining in the firm has [confidential or protected] information . . . that is material to the matter.

Rule 1.10 "imputes one attorney's conflicts to all other attorneys in his firm." *United States v. McDade*, 404 F. App'x 681, 683 (3d Cir. Dec. 22, 2010); *see also Exterior Sys. v. Noble Composites, Inc.*, 210 F. Supp. 2d 1062, 1068 (N.D. Ind. 2002) ("Rule 1.10 addresses situations where a conflict of interest may be imputed to other lawyers associated in the same firm with the tainted lawyer.").

Resolving the question of whether to disqualify counsel requires the Court to "carefully sift all the facts and circumstances." *Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.*, 632 F. Supp. 418, 428 (D. Del. 1986) (internal citations and quotation marks omitted). "[W]hether disqualification is appropriate depends on the facts of the case and is never automatic." *Boston Scientific Corp. v. Johnson & Johnson, Inc.*, 647 F. Supp. 2d 369, 374 n.7 (D. Del. 2009).

Finally, the Court approaches motions to disqualify counsel with "cautious scrutiny," mindful of a litigant's right to the counsel of its choice. *Laker Airways, Ltd. v. Pan American World Airways*, 103 F.R.D. 22, 27-28 (D.D.C.1984).

5

## IV. DISCUSSION

Plaintiff moves for disqualification on the grounds there is a conflict of interest, the subject matter of the case bears a substantial relationship to the matter in which counsel previously advised or represented the adverse party, and lawyers should avoid even the appearance of professional impropriety. More particularly, Plaintiff believes that YCST holds privileged information and that it knew it possessed her past files but failed to raise conflict of interest concerns with Defendants or the Court. (D.I. 94) Defendants oppose the motion. They argue that there is no conflict of interest or imputation of conflicts of interest and that Plaintiff should be equitably estopped from seeking disqualification. (D.I. 93)

There is no dispute that YCST had an attorney-client relationship with Plaintiff. However, Rule 1.9 is inapplicable to Plaintiff's motion given that Fariss, the lawyer with whom Plaintiff had a relationship, is no longer employed at YCST, and she does not represent Defendants.

Hence, the Court turns to M.R.P.C. 1.10(b), which addresses imputation of conflicts of interest. Upon review of the evidence submitted by the parties, the Court finds that the Caesar Rodney matter on which Farris represented Plaintiff is not substantially related to the instant lawsuit. There are different defendants in the two cases, Caesar Rodney and Trinity Parish. There is not significant factual overlap between the two cases, and the cases do not involve the same legal dispute, even though both cases raise employment discrimination issues. The Caeser Rodney case asserted that Plaintiff, who at the time was a teacher, was denied a promotion based upon her race. (D.I. 93 at Ex. B) The instant case raises numerous federal and State claims, including that Plaintiff, the executive director of Delaware Futures, was terminated from her employment based upon race, age, disability, and retaliation – but at a different time than occurred with Caesar Rodney and by a different employer.

As to the second prong, Plaintiff makes generalizations only, and has not met her burden to identify any confidential information allegedly in YCST's files that would materially benefit Defendants in the instant case. Plaintiff states: (1) "It is Plaintiff's belief that Defendants' counsel hold privilege[d] information from Plaintiff's witness file from employment discrimination case *McDonald v. Caeser Rodney School District*" (D.I. 91 at 2); and (2) "Opposing counsel being privy to a wealth of information about Plaintiff's personal and professional background [] continues to aggressively pursue employment discrimination litigation" (D.I. 94 at 2).

Plaintiff has failed to satisfy either the first or second prongs of M.R.P.C. 1.10(b). Therefore, the Court will deny her motion to disqualify.

Finally, Plaintiff has not presented any persuasive evidence to suggest that allowing YCST to continue to represent Defendants would prejudice the fairness of this proceeding. *See Bowden v. Kmart*, 1999 WL 743308 (Del. Super. Ct. July 1, 1999) (court considered fact that Kmart did not move to disqualify attorney from previous representation of plaintiff in similar action against Kmart in denying motion to disqualify law firm).

Having reached these conclusions, the Court need not address Defendants' additional contention that Plaintiff should be estopped from seeking disqualification of YCST because she previously failed to object to YCST's representation of opposing parties in the 2002 Red Clay litigation.

Considering the circumstances of the conflict of interest, the Court exercises its discretion and declines to disqualify YCST from representing Defendants.

V.     **CONCLUSION**

For the above reasons, the Court will deny Plaintiff's motion to disqualify opposing counsel for conflict of interest. (D.I. 91) An appropriate Order follows.