# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

M. DENISE TOLLIVER,                       :
                                          :
    Plaintiff,        :
                                          :
                                          :
    v.                :    C.A. No. 14-1021-LPS
                                          :
TRINITY PARISH FOUNDATION, et al.,        :
                                          :
    Defendants.       :

---

M. Denise Tolliver, Camden, Delaware, Pro Se Plaintiff.

Lauren E.M. Russell, Esquire, Scott A. Holt, Esquire, and Margaret M. DiBianca, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware. Counsel for Defendants.


## MEMORANDUM OPINION


August 2, 2017

Wilmington, Delaware

*[signature]*

**STARK, U.S. District Judge:**

## I.    INTRODUCTION

Plaintiff M. Denise Tolliver ("Tolliver" or "Plaintiff"), who proceeds *pro se*, commenced this employment discrimination action on August 8, 2014.  The Second Amended Complaint (D.I. 25) is the operative pleading and raises claims against Defendants Trinity Parish Foundation ("TPF"), Delaware Futures, Inc. ("DFI"), Reverend Patricia Downing ("Rev. Downing"), and Maile Statuto ("Statuto").

Presently before the Court are Defendants' Motion for Summary Judgment (D.I. 132), opposed by Tolliver,[1] and Plaintiff's Motion to Amend,[2] Motion to Expedite, and Motion to Amend Scheduling Order and for Rule to Show Cause (D.I. 166, 168, 173).  For the reasons that follow, the Court will grant Defendants' motion and will deny Plaintiff's motions as moot.

## II.    BACKGROUND

The Second Amended Complaint contains fourteen counts, as follows:

(1) Count I against TPF and DFI alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, and the Delaware Discrimination in Employment Act ("DDEA"), 19 Del. C. §§ 710 *et seq.*;

(2) Count II against all Defendants alleging race discrimination pursuant to 42 U.S.C. § 1981;

(3) Count III against TPF and DFI alleging age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, and the DDEA;

---

[1]The parties have submitted many of the same exhibits in support of their respective positions with regard to summary judgment.  The Court sees no need to cite to each of the respective duplicative exhibits.

[2]The motion seeks to add a plaintiff, Tolliver's adult daughter, as Tolliver's estate executrix.

(4) Count IV against all Defendants alleging retaliation in violation of Title VII, the ADEA, and the DDEA;

(5) Count V against Rev. Downing and Statuto and Count VI against TPF and DFI alleging civil rights violations under 42 U.S.C. § 1983;

(6) Count VII against TPF and DFI alleging wrongful termination/breach of contract under Delaware law;

(7) Count VIII against all Defendants alleging intentional infliction of emotional distress under Delaware law;

(8) Count IX against all Defendants alleging violations under Delaware law of the whistleblower provisions of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A, as set forth in the Delaware Whistleblower's Protection Act ("DWPA"), 19 Del. C. §§ 1701-08, *et seq.*;

(9) Count X against all Defendants alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140 and § 1141;

(10) Count XI against all Defendants alleging defamation under Delaware law;

(11) Count XII against all Defendants alleging disability discrimination under the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. §§ 701, *et seq.*;

(12) Count XIII against DFI alleging violations of confidentiality and invasion of privacy under Delaware law; and

(13) Count XIV against TPF and Rev. Downing for tortious interference under Delaware law. (D.I. 25)

Both TPF and DFI are nonprofit corporations. (*Id.* at 2) TPF is DFI's landlord. (*Id.*) The Second Amended Complaint alleges that TPF and DFI were Tolliver's joint employers. (*Id.* at 2)

3

Tolliver was DFI's executive director from June 2001 until her employment was terminated on July 15, 2013. (D.I. 134 at 4; D.I. 135 at 44, 52, 53)

Tolliver is a Black female over the age of 40. (D.I. 25 at 2) On February 23, 2013, Tolliver requested a medical leave for "heart condition complications." (D.I. 135 at 63-64) A physician's statement dated February 28, 2013 states that Tolliver "ceased work due to this impairment" on February 25, 2013, and in the section indicating the date through which the limitation will last, it states: "uncertain tentative 3/8/13." (D.I. 157 at 1)

On February 24, 2013, Tolliver advised DFI's Board of Directors (the "Board"), via email, of her leave of absence beginning the next day, and she was placed on short-term disability leave ("STD") through DFI's insurer, The Hartford. (D.I. 135 at 14-15, 19-21, 64, 65; D.I. 148 at 3) In the email, Tolliver asked that Evette Houston ("Houston"), who had been trained to be Tolliver's successor, handle all programming matters in her supervision of the staff; that Andrea Rotsch ("Rotsch") work with bookkeeper Denise Foley ("Foley") in all financial matters; and that Board member Bruce Kallos ("Kallos") not be involved in day-to-day operations for programing. (D.I. 135 at 14-15)

DFI became aware that Tolliver was been working while on medical leave. (D.I. 136 at 75) In turn, DFI contacted its landlord, TPF, and asked it to change the locks to the building. (D.I. 135 at 23; D.I. 136 at 75) In addition, DFI suspended Tolliver's access to the DFI email system. (D.I. 135 at 26; D.I. 136 at 75)

On the afternoon of March 6, 2013, Houston left Tolliver a telephone message, telling Tolliver that she had been dropped from the DFI email account and that Houston had been warned not to contact Tolliver about DFI business through its email account. (D.I. 163 at 8) Houston also mentioned that the Board was moving in the direction to place Nicole Sailer ("Sailer") on the Board,

4

and that Houston believed her days with DFI "were numbered." (*Id.*) That evening, Houston was appointed acting executive director during Tolliver's absence. (D.I. 136 at 13; D.I. 139 at 17) Houston is Black and under the age of 40. (D.I. 136 at 13-16) Sailer provided a sworn statement that she never expressed a desire to serve as executive director of DFI and was never considered for the position. (D.I. 135 at 46)

On March 7, 2013, Tolliver asked for confirmation of her employment status, noting that she was on excused medical leave through March 8, 2013, and that access to her DFI email account had been terminated. (D.I. 135 at 21) She was advised that she was on disability leave and, according to personnel policy confirmed at the DFI Board meeting on March 6, 2013, she was to have no contact with her workplace. (*Id.*) In turn, Tolliver requested "a letter which explains in detail the Board's decision and 'personnel policy.'" (*Id.*) Tolliver testified that, following the March 7, 2013 notice, she did not return to work. (D.I. 136 at 11)

On April 1 and 3, 2013, Kallos, the DFI Board president wrote, and then emailed, Tolliver and requested she provide medical documentation explaining the nature of her medical limitations and how long she expected to be absent from work. (D.I. 135 at 27-31, 36-37) On April 3, 2013, Tolliver submitted a grievance to the Board's executive committee and complained that the Board's requests for information were a form of "on-going intimidation." (D.I. 135 at 32) On April 9, 2013, Tolliver's physician provided a note that Tolliver was "unable to return to work until July 1, 2013." (*Id.* at 13)

On April 19, 2013, Statuto, as chair of the Board's personnel committee and chair of the grievance committee, responded to Tolliver's grievance, advising her that the executive committee had reviewed her allegations and could not conclude that she had been subjected to harassment or intimidation concerning her employment with DFI. (D.I. 135 at 36-37; D.I. 136 at 58-60, 74-75)

On May 6, Tolliver replied to Statuto's letter, and thanked the Board for its support of her request to return to work "at such time [as] I am able." (D.I. 135 at 38) The letter referred to incidents of "actionable harassment," as follows: (1) DFI failed to accurately report Tolliver's workplace injury that resulted in her disability; (2) DFI failed to investigate a reported November 19, 2012 assault and/or make available written results of the investigation; (3) DFI executed a workplace eviction and refused to provide Tolliver the written policy of disability and of no contact with workplace; and (4) her disability accommodation should be regarded by the Board. (*Id.*) Tolliver requested that her salary continue while she was on STD. (*Id.*)

On May 13, 2013, Statuto responded to each of Tolliver's claims and advised her of the conclusion that the claims were without merit. (D.I. 135 at 39-40) Statuto also explained that Tolliver's letter "misunderstands or misrepresents the Board's granting of [her] request for a medical leave of absence through July 1, 2013," and that "the Board [did] not approve an open-ended leave" or request for reinstatement "at such time [as she was] able to return to work." (*Id.* at 40) The letter acknowledged Tolliver's request for continuation of her salary and reimbursement of medical co-pays while on a leave of absence and advised Tolliver that "it is not the policy or practice of [DFI] to continue to pay an employee's salary while that employee is eligible for and receiving short-term disability payments;"[3] DFI further declined to institute a policy or practice with respect to medical co-pay reimbursement. (*Id.*)

On May 17, Tolliver wrote to the Board and advised it of her hostile work environment - discrimination claim based upon harassment in the form of workplace eviction-lockout directed at her disability and a retaliation claim; the latter claim was based on DFI's May 13, 2013 letter allegedly

---

[3]Statuto advised Tolliver that a prior offer of salary continuation to a DFI employee had been made by Tolliver, that decision had been Tolliver's, the Board had not been informed of Tolliver's decision, and the Board was unaware of any salary continuation practice. (D.I. 135 at 40)

having been written "in contradiction to April 9th pertaining to Board approved leave," and on Tolliver allegedly having been "black listed" as a result of the DFI disability no workplace contact practice. (*Id.* at 42)  In addition, Tolliver advised that she had not received her STD compensation "per policy from [DFI] nor its insurance provider, the Hartford." (*Id.*)

A May 24, 2013 physician's note indicated that Tolliver was being followed by a cardiologist, who advised her to avoid strenuous physical activity until the completion of an evaluation.  (D.I. 157 at 2)  On May 28, the Board was advised that Tolliver had retained counsel.  (D.I. 148 at 24)  On June 10, 2013, Tolliver's claim for long-term disability ("LTD") benefits was approved and, effective May 27, she was placed on LTD.  (*Id.* D.I. 135 at 48; D.I. 148 at 25)  The initial letter advised that no benefits would be payable beyond May 26, 2015.[4]  (*Id.*)  On August 28, 2013, Tolliver's LTD benefits were terminated after The Hartford completed a review of Tolliver's claim and determined that the information it obtained did not support a claim of total disability beyond August 28, 2013. (D.I. 135 at 48; D.I. 148 at 36)

On June 20, 2013, Tolliver's attorney sent DFI a letter that stated Tolliver was in the process of filing a charge of discrimination.  (D.I. 135 at 43)  The letter advised DFI that Tolliver "is not presently able to perform the essential duties of her job as executive director . . . due to reasons . . . caused by unlawful actions taken by [DFI]." (*Id.*)  The letter went on to state that Tolliver's claim for LTD had been approved and that, should her condition improve to a point where she could perform all of her duties, she would appreciate the opportunity to resume her job as executive director.  (*Id.*)  This was the last communication Tolliver's attorney had with DFI on her behalf prior to her termination.  (D.I. 136 at 10, 11)  Tolliver herself had no communication with DFI between

---

[4]Tolliver's declaration states that during her tenure as executive director, she was awarded disability benefits under the Hartford plan through May 26, 2015, but the benefits terminated early on August 27, 2013.  (D.I. 145 at ¶ 4)

June 20, 2013 and August 3, 2013, and was unaware of any communication by her attorney with DFI during that period. (*Id.* at 12-13) Tolliver explained that they "were waiting to hear back from the June 20th letter." (*Id.* at 17)

On August 3, 2013, Tolliver received a letter via certified mail, dated July 15, 2013, advising her that her employment was terminated, effective immediately, on the grounds that: (1) Tolliver's leave of absence was approved through July 1, 2013; (2) she did not return to work on July 1, 2013; (3) her attorney represented to the Board that Tolliver had applied, and received, LTD benefits; (4) it was the Board's understanding that Tolliver had represented to its LTD carrier that she continued to be unable to work for medical reasons, and in the opinion of Tolliver's treating physicians the situation would continue indefinitely; and (5) DFI had no legal obligation to grant an indefinite leave of absence and could not do so. (D.I. 135 at 44)

On July 17, 2013, DFI posted a notice for application to fill the position of executive director. (D.I. 139 at 28) At some point after Tolliver's termination of employment, interim executive director Houston was selected to replace Tolliver on a permanent basis. (D.I. 136 at 13-14) Houston held this position until her resignation on September 1, 2016. (*Id.* at 75)

Tolliver filed a charge of discrimination on July 24, 2013 alleging race and age discrimination, as well as retaliation. (D.I. 1 Ex.) She received a right to sue letter dated June 3, 2014 and a notice of suit rights dated March 3, 2015. (D.I. 1 Ex.; D.I. 11)

On October 10, 2013, Tolliver received an email from an individual who had learned at the DFI annual meeting that Tolliver had retired. (D.I. 139 at 38) The email stated, "I hope you are feeling better and taking good care of yourself." (*Id.*)

Defendants move for summary judgment on the grounds that: (1) all discrimination and retaliation claims against TPF and Rev. Downing must be dismissed because no employment

8

relationship exists; (2) as to Counts I through IV, Tolliver cannot present evidence sufficient to prove a *prima facie* claim of discrimination or retaliation; (3) Counts V and VI, raised pursuant to 42 U.S.C. § 1983, should be dismissed because all Defendants are private actors; (4) Count VII is preempted; (5) Tolliver cannot satisfy the elements of the tort claims raised in Counts VIII, XI, and XIII of the Complaint; (6) Tolliver has not engaged in protected activity as is required for the whistleblower claims raised in Count IX; (7) Tolliver cannot present evidence sufficient to meet the statutory requirements for relief on the ERISA claim raised in Count X; (8) the Rehab Act claim in Count XII should be dismissed because DFI does not receive federal financial assistance as required for jurisdiction under the statute, and Tolliver cannot present evidence sufficient to prove a *prima facie* claim of disability discrimination; and (9) Count XIV should be dismissed because, at all times, TPF and Rev. Downing were acting upon DFI's request, but DFI cannot be found to have tortiously interfered with its own employment contract with Tolliver.

## III.  LEGAL STANDARDS

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## IV.  DISCUSSION

### A.  Joint Employers

Defendants move for summary judgment on Tolliver's claim that TPF was her joint employer for purposes of state and federal anti-discrimination statutes. Tolliver's position that TPF was her joint employer relies upon a request made by DFI to Rev. Downing, a TPF Board member and church leader, to change the locks on the building to prevent Tolliver's access while she was on leave, which TPF did on or about March 5, 2013. Tolliver opposes summary judgment, and argues that TPF paid the entire lockout cost to Farnan's Lock Service and that TPF is obligated to abide by Delaware's landlord tenant code, 25 Del. C. § 5101, *et seq.*[5]

For the purposes of employment discrimination statutes, a joint employment relationship exists when "two entities exercise significant control over the same employees." *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997) (citations omitted). Whether an entity exercises significant control over an employee along with another entity hinges on whether that entity has: (1) "authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours;" (2) "day-to-day supervision of employees, including employee discipline;" and (3) "control of employee records, including payroll, insurance, taxes and the like." *Plaso v. IJKG, LLC*, 553 F. App'x 199, 204-05 (3d Cir. Jan. 21, 2014).

A review of the applicable law and the evidence of record leads the Court to conclude that there is no genuine issue of material fact as to whether TPF was Tolliver's joint employer. Tolliver testified that no one at TPF had the authority to terminate her, discipline her, or otherwise

---

[5]Tolliver raises the landlord/tenant claim for the first time in her opposition to Defendants' motion for summary judgment. It will not considered by the Court. *See Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. Apr. 23, 2008) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

substantively direct her work, and she was compensated by DFI. (D.I. 136 at 19-20) She also testified that there was no communication with Rev. Downing regarding her medical leave or the termination of her employment, and Rev. Downing did not have the authority to make decisions about Tolliver's compensation. (*Id.* at 38-39)

Hence, there is not evidence of record from which a reasonable factfinder could find that TPF had authority to hire and fire Tolliver, promulgate work rules and assignments, or set conditions of her employment, including compensation, benefits, and hours. Her compensation was paid by DFI, and it had the sole authority to terminate her employment. Further, there is not evidence in the record from which a reasonable factfinder could find that TPF exercised significant day-to-day supervision over Tolliver or that TPF had control of employee records, including payroll, insurance, taxes and the like.

Therefore, the Court will grant the motion for summary judgment as to all claims raised against TPF based upon Tolliver's contention that TPF was her joint employer.

**B. Race Discrimination under Title VII, § 1981, and the DDEA; Age Discrimination under the ADEA and the DDEA; and Disability Discrimination under the Rehab Act**

Tolliver raises employment discrimination claims under Title VII, 42 U.S.C. § 1981, the ADEA, the Rehab Act, and the DDEA by reason of race, age, and disability. Title VII states that "[i]t shall be an unlawful employment practice for an employer to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin" 42 U.S.C. § 2000e-2(a). Section § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce

contracts . . . to the full and equal benefit of all laws . . . as is enjoyed by white citizens."[6] 42 U.S.C. §

1981. In employment discrimination cases, § 1981 claims are subject to the same analysis as

discrimination claims under Title VII of the Civil Rights Act of 1964. *See Brown v. J. Kaz, Inc.*, 581

F.3d 175, 181-82 (3d Cir. 2009). The ADEA prohibits an employer from "discriminat[ing] against

any individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's age." 29 U.S.C. § 623(a). Similar to Title VII and the ADEA, the

DDEA prevents discrimination by an employer on the basis of race and age.[7] *See* 19 Del. C.

§ 711(a); *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 212 (3d Cir. 2015); *Schuster v. Derocili*, 775 A.2d

1029, 1033 (Del. 2001).

Section 504 of the Rehabilitation Act prohibits programs that receive federal funds from

discriminating against an individual based on disability, as follows: "No otherwise qualified

individual with a disability in the United States . . . shall, solely by reason of her or his disability, be

excluded from the participation in, be denied the benefits of, or be subjected to discrimination under

---

[6]Congress enacted 42 U.S.C. § 1981 to prevent discrimination by private individuals. *See
Al-Khazraji v. Saint Francis Coll.*, 784 F.2d 505, 515 (3d Cir. 1986). "[D]irectors, officers, and
employees of a corporation may become personally liable when they intentionally cause an
infringement of rights protected by Section 1981, regardless of whether the corporation may also be
held liable." *Id.*

[7]The Court considers the race and age discrimination claims under both federal and state
law, as the law is unsettled as to whether a plaintiff may proceed under Title VII and the ADEA, as
well as the DDEA. *See Phifer v. Sevenson Envtl. Servs., Inc.*, 619 F. App'x 153, 156 (3d Cir. July 27,
2015); 9 Del. C. § 714(c) ("[The plaintiff] shall elect a Delaware or federal forum to prosecute the
employment discrimination cause of action so as to avoid unnecessary costs, delays and duplicative
litigation. A [plaintiff] is barred by this election from filing cases in both [the Delaware] Superior
Court and the federal forum."); *compare Brangman v. AstraZeneca, LP*, 952 F. Supp. 2d 710, 724 (E.D.
Pa. 2013) (concluding that § 714(c) does not bar plaintiff from bringing both Title VII and DDEA
claims in federal court) *with Daughtry v. Family Dollar Stores, Inc.*, 634 F. Supp. 2d 475, 483 n.13 (D.
Del. 2009) (concluding that § 714(c) precludes plaintiff from pursuing relief under both Title VII
and DDEA).

any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a). Individual liability does not apply under this statute for public employees. *See A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) ("Suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals.").

A plaintiff may prove discrimination by direct evidence, as set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244–46 (1989), or indirectly, through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Brown v. Kaz*, Inc., 581 F.3d 175, 182 (3d Cir. 2009) (discussing race discrimination claims under § 1981 and Title VII); *Remp v. Alcon Lab., Inc.*, __F. App'x__, 2017 WL 3142474 (July 25, 2017) (stating courts apply burden shifting test established in *McDonnell Douglas* to ADEA claims); *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007) ("[T]he familiar framework established in *McDonnell Douglas* . . . for Title VII cases is equally applicable to discrimination claims under the Rehabilitation Act."); *Shah v. Bank of Am.*, 346 F. App'x 831, 834 n.2 (3d Cir. Sept. 10, 2009) (stating claims under DDEA are subject to same analysis as Title VII).

Here there is no direct evidence of discrimination, so the Court turns to the *McDonnell Douglas* burden-shifting framework. Under this framework, Tolliver must first establish a *prima facie* case of discrimination by proving that: (1) she is a member of a protected class; (2) she suffered some form of adverse employment action; and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination, such as might occur when a similarly-situated person not of the protected class is treated differently. *See Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999). To succeed on a status discrimination claim, a plaintiff must show that an improper consideration was "a motivating factor" for the adverse action. *See e.g.*, *University of*

*Texas Southwestern. Med. Ctr. v. Nassar*, __U.S.__, 133 S. Ct. 2517, 2534 (2013); 42 U.S.C. § 2000e-2(m).

The elements of a *prima facie* case may vary depending on the facts and context of the particular

situation. *See Pivirotto v. Innovative Sys. Inc.*, 191 F.3d 344, 352 (3d Cir. 1999).

If a plaintiff succeeds in establishing her *prima facie* case, the burden shifts to the defendant

employer to proffer a "legitimate non-discriminatory" reason for its actions. *See Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. at 142. If a defendant meets this burden, the burden shifts back to the

plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is

pretextual. *See id.* at 142-43. To do this, a plaintiff must "point to some evidence, direct or

circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's

articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely

than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d

759, 764 (3d Cir. 1994) (citations omitted). "[T]o avoid summary judgment, the plaintiff's evidence

rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that

each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or

otherwise did not actually motivate the employment action (that is, the proffered reason is a

pretext)." *Harding v. Careerbuilder, LLC*, 168 F. App'x 535, 537 (3d Cir. Feb. 27, 2006) (internal

quotation marks and citations omitted).

Applying this framework, the Court now turns to reviewing each discrimination claim.

*Race Discrimination.* To prevail on a claim of race discrimination, a plaintiff must first

establish a *prima facie* case by showing that "s/he suffered an adverse employment action . . . under

circumstances that could give rise to an inference of intentional discrimination" on the basis of race.

*Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). The most common evidence of circumstances

suggesting discrimination is evidence of disparate treatment, "whereby a plaintiff shows that [s/he]

was treated less favorably than similarly situated employees" of a different race. *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 366 (3d Cir. 2008). To make a comparison of her treatment to that of an employee outside her protected class for purposes of a Title VII claim, Tolliver must show that she and the employee(s) are similarly situated in all relevant respects. *See Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir. Dec. 8, 2009) (citations omitted). "[I]n disciplinary cases or in the context of personnel actions, for example, the relevant factors often include a 'showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Id.* at 654 (citation omitted). "Whether a comparator is truly similarly-situated to the plaintiff is an issue of law." *Moore v. Shinseki*, 487 F. App'x 697, 698 (3d Cir. 2012) (citation omitted). Whether a factor is relevant for purposes of a "similarly situated" analysis must be determined by the context of each case. *See Houston*, 355 F. App'x at 654.

Defendants argue that Tolliver cannot establish a *prima facie* case of race discrimination as she is only able to establish one element of a *prima facie* case: that she is a member of a protected class. To support her race discrimination claim, Tolliver relies upon her treatment as compared to that accorded to Rotsch, who is White, and was the director of development. (D.I. 136 at 23) Tolliver recommended the elimination of Rotsch's job, but Rotsch's employment continued. *(Id.)* However, as acknowledged by Tolliver, Rotsch held a different position and had different job duties than her. *(Id.)* Given the evidence of record, the Court concludes that there is insufficient evidence that Rotsch is a comparator.

Tolliver also contends that racial discriminatory conduct occurred when, upon request by DFI, Rev. Downing changed the locks, preventing Tolliver from accessing the employment

premises. Contrary to Tolliver's position, however, there is nothing in the record to support a finding that Rev. Downing changed the locks due to Tolliver's race; rather, a reasonable factfinder could only find that she changed the locks following the request of TPF's tenant.

Accordingly, the Court finds that Tolliver has not established a *prima facie* case with respect to her race discrimination claims.

*Age Discrimination.* To establish a *prima facie* case of age discrimination, a plaintiff must satisfy four elements: (1) she is at least 40 years of age; (2) she is qualified for the position in question; (3) she has suffered an adverse employment action; and (4) she has been replaced by a sufficiently younger employee to permit a reasonable inference of age discrimination. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995). In addition, a plaintiff "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167, 180 (U.S. 2009).

Tolliver testified that age discrimination occurred when, during the summer of 2012, Sailer launched a young professionals initiative to attract more young people as donors and volunteers. (D.I. 136 at 24-25) According to Tolliver, Sailer requested that a younger staff member attend the event to speak on behalf of DFI. (*Id.* at 26-27) Tolliver also bases the age discrimination claim on the fact that she was replaced by Houston, who is a younger individual, and whom (according to Tolliver's testimony) was less qualified, even though Tolliver placed Houston in charge during Tolliver's absence on medical leave. (D.I. 135 at 14-15; D.I. 136 at 21, 55-568)

Notably, Tolliver did not present facts to demonstrate that she was qualified for the position in question. Rather, the evidence of record is that Tolliver was not capable of performing the essential functions of her job during the relevant time-frame, due to her disability. Accordingly, the

Court finds that Tolliver has failed to meet her burden to make out a *prima facie* case of age discrimination.

*Disability Discrimination.* Defendants contend that summary judgment is appropriate under the Rehab Act on the basis that Tolliver has not identified any evidence of disability discrimination.[8] In order to sustain a claim of discrimination under the Rehab Act, Tolliver must show that: (1) she has a disability; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she was nonetheless terminated or otherwise prevented from performing the job. *See Donahue v. Consolidated Rail Corp.*, 224 F.3d 226, 229 (3d Cir. 2000); 29 U.S.C. § 794(d); *see also Donahue*, 224 F.3d at 229 ("The elements of a claim under § 504(a) of the Rehabilitation Act are very similar to the elements of a claim under Title I of the Americans with Disabilities Act").

In the view of Defendants, Tolliver does not set forth a *prima facie* case of disability discrimination because, at the time of her discharge, she was not able to perform the essential duties of her job as executive director. A reasonable factfinder could not find otherwise. Therefore, Tolliver has failed to set forth a *prima facie* case of disability discrimination.

*Legitimate, Nondiscriminatory Reasons.* Even assuming, arguendo, that Tolliver has established *prima facie* cases of race, age, and/or disability discrimination, a reasonable factfinder could only find that Defendants provided legitimate, nondiscriminatory reasons for the decision to terminate Tolliver. The evidence indicates that when Tolliver's authorized medical leave ended on July 1, 2013, she failed to return to work, failed to provide any medical documentation to support

---

[8]Defendants also contend that the Rehab Act is inapplicable because DFI does not receive direct funding from the federal government. Tolliver, however, testified that DFI is a federal contractor and, as a subgrantee, received funding from the Department of Labor. (D.I. 136 at 64-66) Given the Court's other conclusions, it need not evaluate this possible other basis for granting summary judgment.

18

continued medical leave, and had her attorney advise the Board that Tolliver was receiving LTD benefits. The lawyer further represented to the Board that Tolliver was unable to perform the essential duties of her job as executive director, and then the Board was advised by its disability insurance carrier that Tolliver's treating physicians had indicated that Tolliver's inability to work for medial reasons would continue indefinitely.

Nothing before the Court that contradicts the proffered reasons for Tolliver's termination. Nor are Defendants' proffered reasons for their actions weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find them unworthy of credence. *See Sarullo v. United States Postal Serv.*, 352 F.3d 789, 800 (3d Cir. 2003). Construing the evidence in the light most favorable to Tolliver (as the Court does throughout its analysis in this Opinion), she has not provided evidence from which a reasonable factfinder could either disbelieve Defendants' articulated reasons, or believe that a discriminatory reason was more likely than not the cause of the employment actions. *See Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 283 (3d Cir. 2001) (reiterating that "it is not enough for a plaintiff to show that the employer's decision was wrong or mistaken, because the issue is whether the employer acted with discriminatory animus").

Accordingly, the Court will grant Defendants' Motion for Summary Judgment on the race, age, and disability discrimination claims.

## C. Retaliation

Tolliver alleges that after she complained of harassment and advised the Board that she intended to file a charge of discrimination, she was terminated from her position. Defendants move for summary judgment on the grounds that Tolliver cannot demonstrate that DFI's actions were a pretext for retaliation.

19

To establish a *prima facie* case of retaliation, a plaintiff must show: (1) she engaged in a protected activity; (2) after or contemporaneous with engaging in that protected activity, she was subjected to an adverse employment action; (3) the adverse action was "materially adverse;" and (4) there was a causal connection between her protected activity and the adverse employment action. *See Hare v. Potter*, 220 F. App'x 120, 128 (3d Cir. Mar. 21, 2007) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "Although timing and ongoing antagonism have often been the basis for the causal link, [Third Circuit] case law clearly has allowed a plaintiff to substantiate a causal connection for purposes of the prima facie case through other types of circumstantial evidence that support the inference." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000). An individual is not protected from all retaliation, only from retaliation that produces an injury or harm. *See Burlington*, 548 U.S. at 67. Hence, a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (citations and internal quotation marks omitted). The Court looks to material adversity because "it is important to separate significant from trivial harms." *Id.* If the plaintiff proves a *prima facie* retaliation claim, the *McDonnell Douglas* burden-shifting analysis described above applies. *See Hare*, 220 F. App'x at 127.

Tolliver contends the following constitutes retaliatory conduct: (1) after she complained of harassment via a letter to Statuto, she was terminated from her position; and (2) she was not allowed to return to work after she filed a charge of discrimination. Even assuming, arguendo, that Tolliver has set forth a *prima facie* case of retaliation,[9] a reasonable factfinder could only find that Defendants

---

[9]It may be that a reasonable factfinder could find a *prima facie* case, particularly given the timing of Tolliver's June 20, 2013 letter advising that she was in the process of filing a charge of discrimination and the July 15, 2013 termination of her employment. *See Clark Cnty. Sch. Dist. v.*

have shown legitimate, nonretaliatory reasons for the actions taken, and could further only find that Tolliver has not rebutted these reasons. *See Michael v. Caterpillar Fin. Servs. Corp.* 496 F.3d 584, 596 (6th Cir. 2007). Tolliver's employment was not terminated until she did not return to work subsequent to July 1, 2013, when her approved leave had expired, following representations by her attorney that she was unable to perform the essential duties of her job as executive director, and after the Board was advised by its disability insurance carrier that Tolliver's treating physicians indicated Tolliver's inability to work for medial reasons would continue indefinitely.

Accordingly, the Court will grant Defendants' motion for summary judgment on the retaliation claims.

### D.     42 U.S.C. § 1983

To establish liability under 42 U.S.C. § 1983, a plaintiff must show that a defendant, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury. *See Biliski v. Red Clay Conso. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3d Cir. 2009).

Tolliver testified that DFI received grants and complies with the requirements of those grants. (D.I. 136 at 35) However, "state contributions to otherwise private entities, no matter how great those contributions may be, will not of themselves transform a private actor into a state actor." *Krynicky v. University of Pittsburgh*, 742 F.2d 94, 102 (3d Cir. 1984)). The evidence of record does not support a finding that Defendants are State actors and, therefore, the § 1983 claims fail as matter of law.

Accordingly, the Court will grant the motion for summary judgment as to the § 1983 claims.

---

*Breeden*, 532 U.S. 268, 273-74 (2001) (temporal proximity alone, when very close, can in some instances establish a *prima facie* case of retaliation).

### E. Whistleblower Statutes

Count IX of the Second Amended Complaint raises State law claims alleging violations of the DWPA whistleblower provision of the SOX. Defendants contend that Count IX should be dismissed for lack of evidence that Tolliver engaged in protected activity. Tolliver claims that she was punished following her notification to the Board of past and present malfeasance of DFI Board member Kallos.

Tolliver does not indicate under which section of the DWPA or SOX she proceeds. However, § 1513(e) of SOX applies only to individuals who have made reports to law enforcement officers, and it does not provide for a civil cause of action. *See* 18 U.S.C. § 1513(e); *Shahin v. Darling*, 606 F. Supp. 2d 525, 539 (D. Del. 2009) (private right of action not recognized under § 1513). In addition, § 1514A is inapplicable, as its provisions apply only to publicly-traded companies. *See* 18 U.S.C. § 1514A(a). There is no evidence of record that DFI is a publicly-traded company.

As to State claims under the DWPA, that statute protects "employees who report violations of law for the benefit of the public." *Eaton v. Coupe*, 2017 WL 626614, at *5 (Del. Super. Feb. 14, 2017). Section 1703 states: "[a]n employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment." 19 Del. C. § 1703. Section 1703(4) prohibits termination of employment "[b]ecause the employee reports verbally or in writing to the employer . . . a violation, which the employee knows or reasonably believes has occurred or is about to occur." 19 Del. C. § 1703(4). The DWPA defines a violation as "an act or omission by an employer, or an agent thereof, that is: Materially inconsistent with, and a serious deviation from, financial management or accounting standards implemented pursuant to a rule or regulation promulgated by the employer or a law, rule, or regulation promulgated under the laws of this State, a political subdivision of this

State, or the United States, to protect any person from fraud, deceit, or misappropriation of public or private funds or assets under the control of the employer." 19 Del. C. § 1702(b)(6).

Tolliver appears to rely upon complaints she made regarding acts taken by Kallos prior to the time he became a member of the Board, a situation to which the DWPA is inapplicable. (D.I. 136 at 49-50) Tolliver also testified that she reported a redirection of DFI funds to Kallos' business acquaintances. (*Id.* at 46-47, 51-55) Tolliver, however, went on to testify that she was not sure if there actually was a violation, but brought it to the Board's attention because "they had a duty." (*Id.* at 47-48) Under the DWPA, when – as here – the report is a verbal report, the employee must establish by clear and convincing evidence that she actually made such a report. *See* 19 Del. C. § 1703(4). The record before the Court lacks such evidence.

In any event, even if Tolliver could establish that she engaged in protected activity under the DWPA, a reasonable factfinder could not find that Tolliver suffered discrimination due to that activity. Tolliver testified that she was harassed and punished by not being permitted to return to work. (D.I. 136 at 57) However, as previously discussed, the record indicates that Tolliver was terminated from her position because she did not return to work following the expiration of her approved medical leave, her attorney advised the Board that she was not capable of performing the essential functions of her job, and the Board was advised by its disability insurance carrier that Tolliver's treating physicians indicated Tolliver's inability to work for medial reasons would continue indefinitely.

As no reasonable jury could find Tolliver's employment termination was a result of the statements she made regarding the actions of Kallos, the Court will grant the motion for summary judgment as to the whistleblower claims.

## F.     ERISA

Tolliver alleges that Defendants frustrated the terms and conditions of the DFI disability plan with The Hartford and that she was prevented from taking full advantage of the "ability" program that would have promoted her return to work with reasonable accommodation. She raises the claims under 29 U.S.C. § 1140 and § 1141.[10] Defendants move for summary judgment on the grounds that there is no evidence of record to support an ERISA violation.

Section 510 of ERISA makes it unlawful for a person to "discharge, fine, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. The purpose of this provision is to prevent employers from terminating or harassing employees in order to stop them from obtaining ERISA-protected benefits. *See Kowalski v. L & F Prods.*, 82 F.3d 1283, 1287 (3d Cir. 1996).

To prevail under § 510, a plaintiff must demonstrate: "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 522 (3d Cir. 1997). To maintain a claim under § 510, an employee need not prove that the sole reason the employer mistreated the employee was to avoid ERISA-protected benefits, *see Jakimas v. Hoffmann-LaRoche, Inc.*, 485 F.3d 770, 785 (3d Cir. 2007) ("[A] plaintiff need not prove that the sole reason for his termination was to interfere with pension rights.") (internal quotation marks omitted), but the employee must show that the defendant-employer had the specific intent to violate ERISA, *see*

---

[10]Section 1141 is a criminal provision whose enforcement is the exclusive prerogative of the Attorney General and, therefore, Tolliver cannot assert a private right of action under § 1141. *See Goins v. Teamsters Local 639-Employers Health and Pension Trust*, 598 F. Supp. 1151, 1155 (D.D.C. 1984).

*Gavalik v. Continental Can Co.*, 812 F.2d 834, 851 (3d Cir. 1987). This means that a plaintiff must show that "the employer made a conscious decision to interfere with the employee's attainment of [ERISA] benefits." *Jakimas*, 485 F.3d at 785 (internal quotations omitted). "Proof of incidental loss of benefits as a result of a termination will not constitute a violation of § 510." *Id.* Rather, an employee must put forth "'some additional evidence' suggesting that interference with ERISA benefits was a 'motivating factor' in the employer's decision." *Balmat v. Certain Teed Corp.*, 338 F. App'x 256, 259 (3d Cir. June 22, 2009) (quoting *Jakimas*, 485 F.3d at 785).

A party may prove specific intent through the use of direct evidence or circumstantial evidence. *See Gavalik*, 812 F.2d at 852 (noting that "[i]n most cases . . . specific intent to discriminate will not be demonstrated by 'smoking gun' evidence" and, as a result, "the evidentiary burden . . . may . . . be satisfied by the introduction of circumstantial evidence"). When a party has no direct evidence of intent to violate ERISA, courts must use the *McDonnell Douglas* burden-shifting framework, discussed above. *See Jakimas*, 485 F.3d at 785

Tolliver testified that she engaged in protected activity when she applied for STD and workers' compensation. (D.I. 136 at 60-61) The STD was approved but the workers' compensation benefits were denied. (*Id.*) Tolliver testified that the disability policy contained an "ability" provision, with the expectation that the worker would receive compensation, with the idea being that the employee would return to work in some capacity. (*Id.* at 61) Tolliver testified that she was not offered an opportunity to return to work in any capacity, that all communications ceased between her and DFI, her email was dropped, and the building locks were changed. (*Id.*) Tolliver also testified that DFI did not "top up her salary" to allow her to receive full salary, as she had requested. (*Id.* at 62)

The Hartford disability policy (*see* D.I. 134 at 5-66; D.I. 135 at 4-12) provides for "disabled and working benefits." (D.I. 134 at 13, 18) "Disabled and working" is defined as the employee performing some, but not all, of the essential duties of his or her occupation, and working on a part-time or limited duty basis. (*Id.* at 18) There is no evidence of record to support a finding that Tolliver's status was "disabled and working," as opposed to unable to perform her essential duties of as executive director.

Tolliver testified that she was able to return to work – although as of June 20, 2013, she was not able to perform all the essential functions of her position – and testified that as of March 8, 2013, she was able to work without any accommodations or restrictions. (*Id.* at 6-8) When Tolliver was shown a physician's note that indicated she was not able to work as of April 9, 2013, she replied that she was able to work in some capacity and she could have worked. (*Id.* at 8) Medical records indicate, however, that Tolliver was not capable of returning to work until at least July 1, 2013, and she was excused from work until then. (D.I. 136 at 6) Nor is there evidence of record that indicates Tolliver ever identified a reasonable accommodation that would allow her to return to work.

In addition, at the time Tolliver's employment was terminated, she was receiving LTD, and there is no evidence that Defendants interfered in any way to prevent her from receiving those benefits or improperly intended to interfere with her rights. Finally, as discussed above, Defendants offered sufficient evidence to support their position that Tolliver was terminated when she failed to return to work after the end of her approved leave, when her attorney advised the Board that she was not able to perform the essential functions of her position as executive director, and when the Board was advised by its disability insurance carrier that Tolliver's treating physicians indicated Tolliver's inability to work for medial reasons would continue indefinitely.

Because Tolliver both fails to support a *prima facie* case by offering evidence upon which a reasonable jury could conclude that her employment was terminated for the specific purpose of interfering with her ERISA-protected rights, and fails to offer evidence that Defendants' non-discriminatory reason for terminating her employment was pretextual, the Court will grant Defendants' motion for summary judgment as to the ERISA claim.

## G.     Claims under Delaware Law

### 1.      Implied Covenant of Good Faith and Fair Dealing

Count VII alleges breach of the implied covenant of good faith and fair dealing based on Defendants' allegedly fabricated, false justification for the termination of Tolliver's employment and their purported violation of the public policy of the State of Delaware. Defendants move for summary judgment on the grounds that the claim is preempted by State law and there is no evidence of fabrication.

In the employment context, actionable claims for breach of the covenant of good faith and fair dealing fall into four categories: (1) where the termination violated public policy; (2) where the employer misrepresented an important fact and the employee relied thereon, either to accept a new position or remain in a present one; (3) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past service; and (4) where the employer falsified or manipulated employment records to create fictitious grounds for termination. *See Lord v. Souder*, 748 A.2d 393, 400 (Del. 2000). Under Delaware law, there is "a heavy presumption that a contract for employment, unless otherwise expressly stated, is at-will in nature with duration indefinite." *Bailey v. City of Wilmington*, 766 A.2d 477, 480 (Del. 2001) (internal quotation marks omitted).

In the Second Amended Complaint, Tolliver alleges that Defendants breached the implied covenant of good faith and fair dealing by violating public policy and fabricating false justifications for the termination of her employment. To the extent Tolliver relies upon the public policy prong, her claims are preempted by Delaware statutes that provide the exclusive remedy for relief. A claim for breach of the covenant of good faith and fair dealing based on at-will employment cannot survive under the public policy theory. *See E.E.O.C. v. Avecia, Inc.*, 151 F. App'x 162, 165 (3d Cir. Oct. 13, 2005); *Shomide v. ILC Dover, Inc.*, 521 F. Supp. 2d 324, 333 (D. Del. 2007) (holding that recovery under breach of covenant claim based on violation of public policy for breach of at-will employment contract was precluded under Delaware Discrimination Employment Statute).

With regard to the fabrication prong, the record simply does not permit a reasonable factfinder to find that Defendants fabricated false justification for Tolliver's termination. Instead, the evidence reflects that Tolliver was given medical leave through July 1, 2013, she did not return to work following that date, she did not inform Defendants that she was capable of returning to work, her attorney advised DFI that Tolliver was not capable of performing the essential duties of her job as executive director, and the Board was advised by its disability insurance carrier that Tolliver's treating physicians indicated Tolliver's inability to work for medial reasons would continue indefinitely. While a reasonable factfinder would not be compelled to conclude affirmatively that one or all of the foregoing reasons were the actual basis for Tolliver's termination, in light of the record (and more pertinently, at this stage of the proceedings) a reasonable factfinder could *not* find that the reason for Tolliver's termination was fabricated and false. Accordingly, Tolliver cannot prevail on her claim.

Even when construing the facts in the light most favorable to Tolliver (as the Court does throughout this Opinion), no reasonable jury could conclude Defendants violated the implied

covenant of good faith and fair dealing. Therefore, the Court will grant Defendants' motion for summary judgment as to this issue.

## 2. Intentional Infliction of Emotional Distress

The Second Amended Complaint raises a claim for intentional infliction of emotional distress. Defendants move for summary judgment on the grounds that there is no evidence of extreme or outrageous conduct.

A claim for intentional infliction of emotional distress "requires proof that [a defendant] intentionally engaged in extreme or outrageous conduct that caused severe emotional distress." *Hunt ex rel. DeSombre v. State*, 69 A.3d 360, 367-68 (Del. 2013). "Outrageous behavior is 'conduct that exceeds the bounds of decency and is regarded as intolerable in a civilized community." *Id.* (internal quotation marks omitted). There is no liability for "mere insults, indignities, or annoyances that are not extreme or outrageous." *Id.* It is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988).

Tolliver described her severe emotional distress as embarrassment, reputation issues, and personal financial uncertainty. (D.I. 136 at 42-43) After a review of the record, the Court concludes that no reasonable jury could find that Defendants engaged in conduct that was so severe that a reasonable person could not be expected to endure it, despite Tolliver's claims of employment discrimination (none of which survive summary judgment). Instead, the record reflects that the steps taken were typical of those in the employment termination process. *See Lemke v. International Total Servs., Inc.*, 56 F. Supp. 2d 472, 488-89 (D.N.J. 1999) (stating courts do not perceive terminations of employment, in and of themselves, as evidence of intentional infliction of emotional

distress, but rather as common occurrence in the workplace). Therefore, the Court will grant Defendants' motion for summary judgment on this claim.

### 3. Defamation

Tolliver alleges that she was defamed. Defendants move for summary judgment on the basis that there is no evidence of defamatory statements.

The tort of defamation consists of libel – which is written defamation – and slander – which is oral defamation. *See Eaton v. Raven Transp., Inc.*, 2010 WL 4703397, at *2 (Del. Super. Nov. 15, 2010). Generally, the elements of defamation are: "(1) a defamatory communication; (2) publication; (3) the communication refers to the plaintiff; (4) a third party's understanding of the communication's defamatory character; and (5) injury." *Id.* "It is hornbook law that truth is an absolute defense to a defamation action." *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1155 (Del. 1981). Additionally, a statement of fact will not be deemed libelous if it is "substantially true." *Ramunno v. Cawley*, 705 A.2d 1029, 1035 (Del. 1998). "That is, no libel has occurred where the statement is no more damaging to plaintiff's reputation in the mind of the average reader than a truthful statement would have been. Immaterial errors do not render a statement defamatory so long as the 'gist' or 'sting' of the statement is true." *Id.*

Tolliver's claim of defamation rests upon an email she received from an individual who learned at the DFI annual meeting that Tolliver had retired, and who stated, "I hope you are feeling better and taking good care of yourself." Tolliver testified that she inferred from the email that the individual must have been told that Tolliver actually retired for medical reasons. (D.I. 136 at 68)

Defendants contend that the defamation claim fails as it rests upon inadmissible hearsay evidence, and the statements were true and, hence, not defamatory. Hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial. *See Smith v.*

30

*City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009). However, the email, upon which Tolliver primarily relies, appears to be inadmissible hearsay. *See White v. Brown*, 408 F. App'x 595, 599 (3d Cir. Nov. 4, 2010).

Even assuming the email is admissible, the evidence of record is that the last communication received from Tolliver's attorney indicated that Tolliver was unable to work due to a medical condition. The email implies that Tolliver had been unwell (*e.g.*, "I hope you are feeling better and taking good care of yourself") and contains no indication that disparaging remarks were made about Tolliver. The fact that Tolliver had been unwell is a true statement and the reference to retirement rather than termination from employment was not damaging to Tolliver's reputation.[11]

Therefore, the Court will grant the motion for summary judgment as to the issue of defamation.

### 4. Invasion of Privacy

Tolliver alleges that Defendants invaded her privacy and breached confidentiality in the handling of her medical records. Defendants move for summary judgment on the grounds that Tolliver placed her medical history at issue.

There are four varieties of the tort of invasion of privacy: (1) intrusion on solitude; (2) public disclosure of private facts; (3) placing a plaintiff in a false light; and (4) appropriation for commercial use. *See Martin v. Baehler*, 1993 WL 258843, at *1 (Del. Super. May 20, 1993). At issue in the instant case is the tort of publication of private facts. Under Delaware law, "one who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable

---

[11]Nor does the record contain any evidence of malice by Defendants in connection with whatever statement was made.

person, and (b) is not of legitimate concern to the public." *Barker v. Huang*, 610 A.2d 1341, 1350 (Del. 1992) (citing Restatement (Second) of Torts § 652D)). A matter has been given publicity when it is "made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Atamian v. Gorkin*, 1999 WL 743663, at *3 (Del. Super. Aug. 13, 1999) (citing Restatement (Second) of Torts § 652D cmt. a) (granting summary judgment to defendant on claim of public disclosure of private facts because doctor's note was communicated only to hospital staff).

Tolliver testified that she directed communication regarding her medical leave of absence to Houston, but it became clear from communication she received that the information was shared with Board members, including Kallos and Statuto. (D.I. 136 at 71) Tolliver testified that the basis for her claim is that any medical information she provided should have been limited to Houston. (*Id.*) Tolliver also took exception to the fact that her medical records were shared with an investigator from the Delaware Department of Labor in response to the charge of discrimination that she filed. (*Id.* at 72)

A reasonable factfinder could only conclude that the disclosure of information was limited to a very small group, and the medical information disclosed related to Tolliver's leave of absence from her position and her subsequent charge of discrimination. Such disclosure is not tortious "publicity" under Delaware law. In addition, once Tolliver placed her medical condition in issue, she waived claims to confidentiality of her medical records. *See e.g., Green v. Bloodworth*, 501 A.2d 1257, 1258 (Del. Super. 1985) (filing personal injury action waives physician-patient privilege as to all medical information relevant to claim); *Conneen v. MBNA Am. Bank, N.A.*, 182 F. Supp. 2d 370, 381 (D. Del. 2002) (confidentiality claim fails because plaintiff instituted claim at EEOC).

For these reasons, the Court will grant Defendants' motion for summary judgment as to the confidentiality and invasion of privacy claim.

### 5.     Tortious Inference with Contract

The Second Amended Complaint alleges that TPF and Rev. Downing, as third parties, breached the lease with DFI and breached Tolliver's employment contract when they restricted her access to her employment premises.

Tortious interference with a contract requires: (1) a contract; (2) about which respondent knew; (3) an intentional act that is a significant factor in causing the breach of such contract; (4) without justification; and (5) that causes injury. *See Estate of Carpenter v. Dinneen*, 2007 WL 2813784, at *5 (Del. Ch. Apr. 11, 2007). In a tortious interference claim, "an agent for a party to a contract cannot [be held liable for] interfere[nce] with her principal's own contract, provided that the agent does not exceed the scope of her authority." *Id.* at *7. In other words, the party that tortiously interferes with a contract must be a "stranger" to the contract itself, as well as a stranger to the business relationship underpinning the contract. *See Tenneco Auto., Inc. v. El Paso Corp.*, 2007 WL 92621, at *5 (Del. Ch. Jan. 8, 2007). A party to a contract cannot interfere or conspire to interfere with its own contract. *See id.* at *2.

Tolliver testified that TPF and Rev. Downing tortiously interfered with her employment contract when they breached the lease and restricted access to her workplace after changing the locks to the DFI offices. (D.I. 136 at 37) However, because TPF is a party to the lease, it cannot, as a matter of law, tortiously interfere with the lease agreement.

With regard to Tolliver's employment contract, the evidence of record indicates that TPF and Rev. Downing were aware of Tolliver's employment with DFI, but there is no evidence of record that TPF or Rev. Downing took significant action that caused a breach of the employment

33

contract or caused the termination of Tolliver's employment. Rather, the evidence indicates that TPF, as DFI's landlord, complied with DFI's request to change the locks of the employment premises. In addition, the evidence indicates that TPF acted on behalf of DFI, as its agent, when it changed the locks to the employment premises at DFI's request. There is no evidence that in changing the locks TPF exceeded the scope of its authority. There could be no breach of the employment contract given that DFI, as a matter of law, cannot interfere with its own contract.

For these reasons, the Court will grant Defendants' motion for summary judgment as to the tortious interference claims.

## V. CONCLUSION

For the above reasons, the Court will grant Defendants' Motion for Summary Judgment (D.I. 132) and will deny as moot Plaintiff's Motions (D.I. 166, 168, 173).

An appropriate Order follows.